CARAWAY, J.,
dissenting.
|,The testament of Mr. Smith contains only two particular legacies and no universal legacy addressing the balance of his estate. Such a will is completely permissible. Courts need not strain to construe the will to dispose of all of the decedent’s property since our law supplements for the balance.
Mr. Smith’s first legacy addresses the decedent’s “personal belongings,” including “any car, truck, furniture and equip- *792 merit.” Thus, this particular legacy addresses the decedent’s corporeal movables.
The second legacy provides as follows:
I give, devise and bequeath all of my monetary assets to my special friend, EVERLENA C. LANE, including but not limited to sales from any and all properties shared between my sister and I. I further give, devise and bequeath my IRA, Savings and Checking Accounts to my friend, EVERLENA C. LANE.
This legacy, the focus of this suit, lists the decedent’s broad concern for the disposition of “monetary assets” or incorporeal movables, “including ... sales from any and all properties shared between my sister and I.”
There is no particular legacy specifically addressing Mr. Smith’s ownership of immovable property. Nevertheless, according to the majority, the decedent’s co-owned family immovables were included in the disputed legacy of his “monetary assets.” This assessment is somehow made from only a reading of the language of the will, since the trier-of-fact found no competent extrinsic evidence of such intent.
|2The Civil Code’s rules for the interpretation of legacies are provided in Articles 1611 through 1616. La. C.C. arts. 1611, et seq. Article 1611(A) first states as follows:
A. The intent of the testator controls the interpretation of his testament. If the language of the testament is clear, its letter is not to be disregarded under the pretext of pursuing its spirit. The following rules for interpretation apply only when the testator’s intent cannot be ascertained from the language of the testament. In applying these rules, the court may be aided by any competent evidence.
La. C.C. art. 1611.
In the articles following this initial directive of Article 1611, the codal provisions and official comments (La.C.C.arts. 1612-1616) identify only a few correctable instances of the lack of clarity in a testator’s disposition. In contrast, in settings other than legacy interpretation, the Civil Code’s provisions for the resolution of ambiguity in legislation or in contract are premised upon the determination of unclear and disputed language “susceptible of different meanings.” La. C.C. arts. 10 and 2048. Yet, the rules for interpretation of legacies do not state a general rule that any ambiguous legacy with a disposition “susceptible of different meanings” allows the court to choose or discern the mind of the decedent. This absence of such general rule authorizing the court to select between two reasonable dispositions from testamentary language “susceptible of different meanings” is recognition of the default principle for a testament set forth in Civil Code Article 880. “In the absence of valid testamentary disposition, the undisposed property of the deceased devolves by operation of law.” La. C.C. art. 880. In recognition of this codal scheme, the guide from the jurisprudence is that “extrinsic evidence may be used on a limited |3basis to determine what the testator’s words mean but not to rewrite the will.” Succession of Burguieres, 612 So.2d 864 (La.App. 5th Cir.1993), writ denied, 614 So.2d 1256 (La.1993).
Thus, from these Civil Code principles, the first question for resolution of this disputed legacy is: How unclear is Mr. Smith’s language? And second, does a specific codal rule for legacy interpretation from Articles 1612-1616 apply, mandating one disposition?
I believe that Mr. Smith’s legacy to Ev-erlena Lane is fatally unclear regarding any intent for a disposition of immovable property. At the time of the will, his sister who is referenced in the legacy had *793 recently died and there was family dispute over her estate. The language of the will was apparently the product of the testator alone and not an attorney. It reasonably reveals the intent that “sales” proceeds, that might result before Mr. Smith’s death “from” the sale of his co-owned immov-ables, be included within his legacy of “monetary assets” to Ms. Lane. As Civil Code Article 1614 and its revision comments demonstrate, the testator’s consideration in the will of the assets he owns at the time of his execution of the will and the assets he might own at the time of his death can cause interpretive issues. Here, that type of issue is reflected in Mr. Smith’s expressed contemplation of his possible sales of the co-owned family im-movables and his desire that “sales” proceeds be included in the legacy to Ms. Lane. While it is unclear if Mr. Smith was focused on “sales” he might make before his death or “sales” thereafter, the immovable properties were clearly to be liquidated and the proceeds fall into his legacy of “monetary assets.”
|40n the other hand, it is very much in doubt that Mr. Smith even contemplated the other contingency that some or all of his immovable properties would remain in his and the family’s co-ownership at his death and be inherited by Ms. Lane as an immovable. If Mr. Smith did contemplate his retention of the tracts until his death, it is reasonable that Mr. Smith’s desire was that the continued co-ownership of the im-movables would be left for his intestate heir and sister’s heirs to resolve.
With this wide and unclear array of possibilities for a particular legacy dealing generally with “monetary assets,” Articles 1612-1616 do not specifically provide a rule mandating one interpretation over another. Article 1612 charges that the “disposition be interpreted in a sense in which it can have effect, rather than” no effect. However, in its context this disposition was to transfer “monetary assets” and effectively operated for such assets existing at death even though the legacy’s condition of the “sales” of the immovables may never have occurred. The other specific codal rules likewise have no application. Therefore, this court is not authorized by the Civil Code’s interpretive provisions to rewrite the disposition as a particular legacy of immovables.
In summary, while the legacy clearly contemplated “sales” of immovables before the testator’s death and a disposition of proceeds “from” those sales, it does not address the possibility of an immovable remaining in Mr. Smith’s estate at death. Therefore, with no operative and valid testamentary disposition of his co-owned family property, the immovable property devolves by operation of law.